UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-81739-CIV-ALTMAN

**RICHARD MINGST**,

    *Petitioner*,

v.

**RICKY D. DIXON, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS**,

    *Respondent.*
_____/

## ORDER

Our Petitioner, Richard Mingst, is a Florida prisoner who's serving a life sentence because he was convicted in state court of sexual battery on a person less than 12 years old, lewd or lascivious molestation, and promoting a sexual performance by a child. In this habeas petition, Mingst challenges the constitutionality of his conviction. *See* Petition [ECF No. 1] at 1.[1] In particular, he contends that the state trial court lacked subject-matter jurisdiction over his case because the charged offenses

---

[1] Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Ibid.* "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). We'll therefore allow this Order to serve as notice of our intent to take judicial notice of every document filed in Mingst's state-court criminal case: *State v. Mingst*, No. 2009-CF-008245A (Fla. 15th Cir. Ct. June 29, 2009) (available at https://appsgp.mypalmbeachclerk.com/eCaseView/search.aspx). The Clerk shall attach a copy of the state-court docket to this Order. If Mingst objects to our decision to take judicial notice of his state-court docket, he may file a motion for reconsideration under FED. R. CIV. P. 59(e). Any such motion must be filed **within 28 days** of this Order and **may be no more than 10 pages in length**. If the motion for reconsideration is late or exceeds **10 pages**, it will be stricken for non-compliance.

occurred in the State of Georgia. *See id.* at 5 ("Florida Courts didn't have jurisdiction to try and imprison me for a crime taking place in Georgia.").

Rule 4 of the Rules Governing Section 2254 Proceedings allows a district court to summarily dismiss any § 2254 petition—without ordering additional briefing—"if it plainly appears from the petition that the petitioner is not entitled to relief." *Paez*, 947 F.3d at 651 (cleaned up); *see also Parrish v. Fla. Dep't of Corr.*, 2020 WL 5848768, at *2 (S.D. Fla. Oct. 1, 2020) (Altman, J.) ("Rule 4 does not require 'briefing before a district court disposes of a habeas petition,' because 'Rule 2(c) [of the Rules Governing Section 2254 Cases] provides that the petition must specify all grounds for relief, state the facts supporting all grounds, and state the relief requested.'" (alteration in original) (quoting *McNabb v. Comm'r, Ala. Dep't of Corr.*, 727 F.3d 1334, 1339–40 (11th Cir. 2013))). "Both a procedural bar and a merits-based deficiency could lead a district court to conclude" that a habeas petition should be dismissed under Rule 4. *Paez*, 947 F.3d at 654. Because Mingst's Petition is plainly untimely under 28 U.S.C. § 2244(d)(1), we now **DISMISS** it as time-barred.

## THE FACTS

The State of Florida charged Mingst by Information with three crimes: sexual battery on a person less than 12 years of age; lewd or lascivious molestation; and the promotion of a sexual performance by a child. *See* Information, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. July 29, 2009), Doc. 27. After a state jury found Mingst guilty of all three counts, the state trial court sentenced him to life in prison. *See* Sentencing Orders, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Dec. 2, 2010), Docs. 163–65. Mingst appealed his conviction and sentence to the Fourth DCA, which (on November 21, 2013) affirmed in an unwritten opinion. *See Mingst v. State*, 145 So. 3d 110, 110 (Fla. 4th DCA 2013). The Fourth DCA's mandate issued on December 20, 2013. *See* Direct Appeal Mandate, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Dec. 20, 2013), Doc. 205. Since the Fourth DCA "made its decision in a per curiam, unwritten affirmance,"

the Florida Supreme Court lacked jurisdiction to consider any subsequent appeal from the Fourth DCA's ruling. *Tolbert v. Florida*, 796 F. App'x 704, 705 n.1 (11th Cir. 2020) (citing *Wells v. State*, 132 So. 3d 1110, 1113 (Fla. 2014)). And Mingst never filed a petition for writ of certiorari with the Supreme Court of the United States. *See* Petition at 3.

The state-court docket then lay dormant for almost four years. *See generally* State Court Docket. Mingst broke this silence on November 28, 2017, when he filed a "Motion for Leave to File a Belated Rule 3.850 Postconviction Motion." Motion for Leave to File Belated Postconviction Motion, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Nov. 28, 2017), Doc. 219. The state postconviction court denied that motion on June 15, 2018. *See* Order Denying Motion for Leave to File Belated Postconviction Motion, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. June 15, 2018), Doc. 228. Although Mingst appealed that decision, the Fourth DCA summarily affirmed on December 6, 2018. *See Mingst v. State*, 262 So. 3d 730, 730 (Fla. 4th DCA 2018). The Fourth DCA issued its mandate on February 22, 2019. *See* Postconviction Mandate, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Feb. 22, 2019), Doc. 241.

Mingst attaches to his Petition several exhibits, which indicate that he later filed two state-court petitions for a writ of habeas corpus: one with the Florida Supreme Court on June 29, 2022,[2] *see* Florida Supreme Court Habeas Petition [ECF No. 1-1] at 16–21, and a second with the Fourth DCA on August 3, 2022, *see* Fourth DCA Habeas Petition [ECF No. 1-1] at 5–12. Both state-court habeas petitions were denied. *See Mingst v. Dixon*, No. SC22-877, 2022 WL 2793537, at *1 (Fla. July 18, 2022) ("Because the Court has determined that relief is not authorized, the case is hereby dismissed."); Order Denying Fourth DCA Habeas Petition [ECF No. 1-1] at 4 (ordering, on September 2, 2022, that the

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

3

"petition for writ of habeas corpus is denied"). Mingst filed this Petition on October 7, 2022. *See* Petition at 1.

## THE LAW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a person in custody pursuant to the judgment of a State court" has one year to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D).

AEDPA's limitations period can be tolled in at least two circumstances. *First*, the limitations period will be tolled for any time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" before the state court. *Id.* § 2244(d)(2). This is what we call "statutory tolling." *Second*, a petitioner may avail himself of "equitable tolling" if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## ANALYSIS

To stem the "flood" of unmeritorious habeas petitions, Congress enacted AEDPA in 1996, "which, among other things, included many significant restrictions on the availability of post-conviction relief in the federal courts[.]" *Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1342 (11th Cir. 2018) (cleaned up). One of these restrictions is AEDPA's time-bar, codified at 28 U.S.C. § 2244(d), which "requires that a state prisoner seeking habeas relief under Section 2254 must bring his federal petition within a year from the date that his state conviction becomes 'final[.]'" *Ibid.* Although Mingst was convicted some *twelve years ago* (and his direct appeal was closed *nine years ago*), he still insists that his Petition is timely for two reasons. *First*, he points out that the "[l]atest actions in state courts are less than a year old," which we'll assume means that Mingst believes he's satisfied the requirements of § 2244(d)(1)(A). Petition at 13. *Second*, Mingst alludes (albeit obliquely) to the fact that he "had a serious stroke," which (he claims) prevented him from timely pursuing his legal remedies. *Ibid.* Both excuses fail.

We'll start with the limitations period set forth in § 2244(d)(1)(A), which begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The Supreme Court has explained that a judgment becomes final "when this Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Mingst concedes that he never filed a petition for writ of certiorari in the Supreme Court, *see* Petition at 3, and our own review of the Supreme Court's docket (and Mingst's state-court docket) confirms this. Mingst's conviction thus became final "when the time for filing a certiorari petition expire[d]," *Clay*, 537 U.S. at 527—which, according to the Supreme Court's rules, happened 90 days after "the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." SUP. CT. R. 13.3; *see also Chavers v. Sec'y, Fla. Dep't of*

5

*Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("[T]he entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A)."). In other words, Mingst's "judgment" became final when the Fourth DCA affirmed the state trial court on November 21, 2013—meaning that the limitations period under § 2244(d)(1)(A) began to run 90 days later, on February 19, 2014. *See Mingst*, 145 So. 3d at 110; *see also, e.g., DeLeon v. Fla. Dep't of Corr.*, 470 F. App'x 732, 733–34 (11th Cir. 2012) ("On direct appeal, where the petitioner did not file a petition for certiorari to the United States Supreme Court, a judgment becomes final after the expiration of the 90 days in which a petition could have been filed.").

Mingst then had until February 19, 2015 to file his § 2254 petition. But he didn't file this Petition until October 7, 2022—almost *eight years* past the operative deadline. That said, AEDPA *does* toll limitations periods for any time during "which a *properly filed* application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2) (emphasis added). But this rather permissive exception to § 2244(d)'s limitations period doesn't save Mingst. Here's why: After the Fourth DCA affirmed his conviction, Mingst filed *nothing* in state court until his "Motion for Leave to File a Belated Rule 3.850 Postconviction Motion" on November 28, 2017. *See* Motion for Leave to File Belated Postconviction Motion, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Nov. 28, 2017), Doc. 219; *see generally* State Court Docket. Since there was no "properly filed application for State post-conviction relief" pending on the state-court docket until November 28, 2017,[3] AEDPA's limitations period ran unchecked from February

---

[3] Of course, we're assuming that the November 28, 2017 postconviction motion *was* "properly filed," even though we're almost certain that it wasn't. Florida law requires that all postconviction motions be filed within "2 years [of] the judgment and sentence [becoming] final." FLA. R. CRIM. P. 3.850(b). Recognizing his failure to meet this requirement, Mingst added the word "belated" to the caption of his motion. *See* Motion for Leave to File Belated Postconviction Motion, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Nov. 28, 2017), Doc. 219. Although we can't tell from the docket whether the state postconviction court dismissed the motion as untimely or denied it on the merits, it

19, 2014, until November 28, 2017—a period of nearly *four* years. *See DeLeon*, 470 F. App'x at 734 ("However, where the state court application for post-conviction relief is filed after the one-year statute of limitations has expired, it does not toll the statute because no time remains to be tolled."). Indeed, even after the state court fully disposed of his postconviction motion on February 22, 2019,[4] Mingst waited *another three years* before taking any further action. *See* Florida Supreme Court Habeas Petition [ECF No. 1-1] at 16–21. To recap: § 2244(d)(1)(A) doesn't apply here because Mingst's one-year period to file a § 2254 petition expired on February 19, 2015—over seven years ago.[5]

Nor do any of the other § 2244(d)(1) limitations periods apply. Mingst doesn't allege that there was an "impediment to filing an application created by State action," a "newly recognized [constitutional right] made retroactively applicable to cases on collateral review," or a new "factual predicate" that couldn't have been discovered earlier through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(B)–(D); *see generally* Petition; *see also Burgess v. Inch*, 2021 WL 2433958, at *3–4 (S.D.

---

seems likely (given what we've said) that the court opted for the former, in which case (as we've suggested) the motion *wasn't* "properly filed." *Jones*, 906 F.3d at 1342 ("[A] state court motion for post-conviction relief cannot be considered 'properly filed' for tolling under Section 2244(d)(2) if the motion was untimely under state law."). Ultimately, though, we don't really care whether the motion was "properly filed" because AEDPA's one-year window expired long before that motion was ever submitted.

[4] A "properly filed" state postconviction motion continues to toll AEDPA's limitations period until "the state's highest court issues its mandate disposing of the motion for post-conviction relief." *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011); *see also* Postconviction Mandate, *State v. Mingst*, Case No. 2009-CF-008245A (Fla. 15th Cir. Ct. Feb. 22, 2019), Doc. 241.

[5] Resisting this conclusion, Mingst misreads § 2244(d)(1)(A). He, after all, insists that his Petition is timely because the "[l]atest actions in state courts are less than a year old." Petition at 13. But the text of § 2244(d)(1)(A) unambiguously provides that the limitations period begins to run when "the judgment [becomes] final by the conclusion of direct review"—*not* from the petitioner's filing of the most recent state-court motion. 28 U.S.C. § 2244(d)(1)(A). And this makes sense. Otherwise, a federal petition might become timely *decades* after a conviction was affirmed so long as the habeas petitioner files *something* in state court. In addition to defying the text of the statute, Mingst's proposed reading would thus defeat the express purpose of the AEDPA. *Cf. Pace*, 544 U.S. at 413 ("On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions . . . quite contrary to the purpose of AEDPA, and open the door to abusive delay.").

Fla. June 15, 2021) (Altman, J.) (declining to apply the alternative limitations periods of § 2244(d)(1) where the petitioner failed to allege that any of them applied).

Mingst's only remaining hope, then, lies in the doctrine of equitable tolling. Remember that, to justify tolling, Mingst must show "that he has been pursuing his rights diligently" *and* "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. Mingst *tries* to meet these requirements by alleging that he suffered a "severe stroke." Petition at 13. We agree that a serious medical condition can sometimes justify a period of equitable tolling. *See, e.g.*, *Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008) (applying "42 days of equitable tolling" to account for the 42 days the petitioner "was hospitalized for pneumonia and tuberculosis"); *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("We have recognized that medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented."). But Mingst "has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014).

And Mingst has given us no details about his stroke, other than to call it "severe": He doesn't, for instance, say when the stroke happened, how long he was hospitalized, or what he did to "pursue his rights diligently" before, during, or after his stroke. We thus cannot say that he's met his burden here. *See, e.g.*, *Roberts v. Cockrell*, 319 F.3d 690, 695 (5th Cir. 2003) ("Roberts has not supplied the necessary details concerning his hospitalizations, such as when and for how long and at what stage of the proceedings they occurred, so as to allow a determination of whether they could have interfered with his ability to file his § 2254 application in a timely manner."); *Helenick v. Walker*, 2006 WL 3791994, at *6 (D. Ariz. Dec. 22, 2006) (Broomfield, J.) ("Although physical incapacity by a stroke may be an 'extraordinary circumstance,' . . . Petitioner does not allege during what time period he was disabled by the stroke, i.e., the time period to which he believes he is entitled to equitable tolling.").

And this matters, recall, because Mingst didn't just miss the applicable time window by a few days, weeks, or even months. He missed it by almost *eight years*. So, even if we agreed that Mingst should get the benefit of *some* tolling, his stroke wouldn't excuse the whole of his *multi-year* delay. *See Lang v. Alabama*, 179 F. App'x 650, 652 (11th Cir. 2006) ("Further, even were we to toll the limitation period during the ten weeks of Lang's chemotherapy and during his six-day hospitalization for heart surgery, Lang's § 2254 petition still would have been untimely."); *Reynolds v. United States*, 2017 WL 11429838, at *1 (S.D. Fla. June 29, 2017) (Middlebrooks, J.) ("[E]ven if Movant was entitled to equitable tolling for his period of hospitalization and recovery, Movant's Motion is still untimely."). Equitable tolling thus cannot resurrect Mingst's claims.

## CONCLUSION

Mingst's Petition was filed over *nine years* after his state-court conviction became final—and over *three years* after the state court fully adjudicated his state postconviction motion. Since no AEDPA exception excuses this delay, his Petition is untimely and must be **DISMISSED**.

## EVIDENTIARY HEARING

We don't need a hearing to develop the factual record in this case. "[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (cleaned up). Since the Petition is plainly untimely, a hearing would be a waste of judicial resources.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where

9

a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Because no jurists of reason would debate our procedural ruling that the Petition is untimely, we **DENY** any request for a COA.

***

Having carefully reviewed the record and the governing law, the Court hereby **ORDERS AND ADJUDGES** that the Petition [ECF No. 1] is **DISMISSED**. The Clerk is **INSTRUCTED** to attach a copy of Mingst's state-court docket in Case No. 2009-CF-008245A to this Order. Any request for a COA is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 10, 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Richard Mingst, *pro se*